NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| RAY FALCON, | Civil Action No.: 12-5782 (JLL) |
| --- | --- |
| Plaintiff, | **OPINION** |
| v. | |
| CONTINENTAL AIRLINES, et al. | |
| Defendants. | |

**LINARES**, District Judge.

This action arises from Plaintiff Ray Falcon ("Plaintiff")'s allegations of workplace discrimination on the basis of his sexual orientation as a result of an incident that occurred on September 23, 2010. Plaintiff filed a complaint in state court on June 21, 2012, alleging the following claims against Defendants Continental Airlines ("Continental") and three Continental employees[1]: (1) sexual orientation discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 *et seq.*, (2) battery; and (3) intentional infliction of emotional distress. Continental removed this matter to federal court on September 14, 2012. Thereafter, Continental filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 on October 24, 2013. Plaintiff filed opposition papers on November 18, 2013, and Continental filed a reply on November 25, 2013.

---

[1] By stipulation, the Continental employees—John Barkai, Alayna Stephens, and Cesar Novoa—were voluntarily dismissed from this case on May 13, 2013. (CM/ECF No. 16.)

The Court has considered the submissions made in support of, and in opposition to, Continental's motion and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Continental's motion is granted in part and denied in part.

## I. BACKGROUND[2]

### A. Background Regarding Conditions of Plaintiff's Employment with Continental

Plaintiff is an openly homosexual man who has been employed as a flight attendant at Continental since March 24, 2009. (*See* Def. Statement of Undisputed Material Facts ("SUMF") at ¶ 1; Pl. Supp. SUMF at ¶ 1.) During the performance of his duties, Plaintiff was expected to comply with Continental's General Code of Conduct and Working Together Guidelines which, among other things, require all employees to act with respect and dignity, honesty, professionalism, and responsibility. (Def. SUMF at ¶ 2.) Continental's Professionalism Guideline also requires all employees to maintain a professional appearance while on duty or while representing Continental to the public. (*Id.* at ¶ 3.)

Plaintiff admits that he was familiar and expected to comply with the appearance standards defined in Continental's Inflight Policies and Procedures Manual, which were made known to him from the commencement of his employment at Continental. (*Id.* at ¶¶ 4, 7.) The appearance standards prohibit any extreme hairstyles, and require flight attendants' hair to be neat, clean, and professional in style. (*Id.* at ¶¶ 5-6.)

### B. Incident of September 23, 2010

---

[2] Only those facts the Court deems relevant to deciding Continental's motion are set forth herein. These facts are taken from the parties' respective Rule 56.1 statements. Unless otherwise noted, the Court deems these facts to be undisputed. Any statement that is not explicitly denied with a proper citation to the record in a responsive Rule 56.1 statement is deemed admitted. *See* Loc. Civ. R. 56.1.

On September 23, 2010, Plaintiff reported for duty at Newark Liberty International Airport to work a late flight to Paris, France. (*Id.* at ¶ 8.) Plaintiff checked in at the crew room at 6:30 p.m. and then left the room. (*Id.* at ¶ 10.) Shortly thereafter, a flight attendant at the duty desk allegedly alerted inflight supervisors Jon Barkai, Cesar Novoa, John Farioli, and Alayna Stephens that Plaintiff checked in with a Mohawk hairstyle.[3] The supervisors then asked Plaintiff to return to the crew room. (*Id.* at ¶ 10.)

Upon his return to the crew room, Plaintiff was advised that his hairstyle was not in compliance with the appearance standards, as it was unprofessional and extreme. (*Id.* at ¶ 11.) The determination of what constitutes a professional hairstyle is a judgment made by supervisors at the duty desk when checking in flight attendants. (*Id.*)

Plaintiff's supervisors advised him that, in accordance with Continental's policy, he would not be able to work the flight to Paris that night as a result of his extreme hairstyle. (*Id.* at ¶¶ 13-14.) Continental maintains that Plaintiff had the option to self-correct his appearance to become compliant with Continental's appearance standards, or be removed from the Paris flight and file a grievance through his union. (*Id.* at ¶ 16.) According to Plaintiff, he attempted to correct the alleged non-compliance by applying gel to his hair; nevertheless, he claims that his supervisors remained intent on removing him from the Paris flight, as his hair was not flattened after his application of the gel. (Pl. Resp. SUMF at ¶ 16.)

Because Plaintiff could not risk losing his pay, he asked Manny Jacob, a flight attendant who owned hair clippers, to cut his hair. (Def. SUMF at ¶¶ 20, 44-45; Pl. Supp. SUMF at ¶ 30.)

---

[3] According to Plaintiff's supervisors, Plaintiff's hair was buzzed to the skin on the sides, and there was a strip of black hair about an inch or an inch and half in width that went straight down the middle on the back of his head. (Def. SUMF at ¶ 12.) Plaintiff, on the other hand, described his hairstyle as a military cut, buzzed on the sides and back, with the back tapered to the top. (Pl. Resp. SUMF at ¶ 12.)

3

After Jacob trimmed Plaintiff's hair, Plaintiff was cleared to work the Paris flight, which he did. (Def. SUMF at ¶ 22.) Consequently, Plaintiff did not lose any pay. (*Id.*)

Plaintiff claims that the people involved in the September 23, 2010 incident knew that he is a homosexual. (Pl. Supp. SUMF at ¶ 3.)[4]

C. Events Following the September 23, 2010 Incident

On or about September 30, 2010, Plaintiff met with Shirley Minn, the Base Director for Newark Inflight Operations and three union representatives. After Plaintiff complained about the September 23, 2010 incident, he was asked to put his complaint in writing. (Def. SUMF at ¶ 23.) By email dated October 4, 2010, Plaintiff provided his account of the September 23, 2010 incident to Minn and Mary Sturchio, the Human Resources Manager for Newark Inflight Operations. (*Id.* at ¶ 24.) Minn subsequently asked Reuben Sande, a lead supervisor for Newark Inflight Operations, to investigate the September 23, 2010 incident. Sande then collected statements from, and personally met with each supervisor involved in the incident. (*Id.* at ¶ 25.)

During his deposition, Sande testified that he determined that none of the supervisors should be reprimanded because, "they did the right thing in removing the flight attendant for extreme hairstyle and they were trying to help [P]laintiff." (*Id.* at ¶ 26, quoting Sande Depos. Tr. 18:8-20.)

By letter dated October 15, 2010, Sturchio advised Plaintiff that Continental had investigated his complaint, and suggested that he contact her with any further issues. (*Id.* at ¶

---

[4] In its response to Plaintiff's supplement Rule 56.1 statement, Continental failed specifically to admit or deny this statement. Instead, Continental provided a narrative response, which is improper under Local Civil Rule 56.1. Accordingly, the Court deems this statement admitted. *See* Loc. Civ. R. 56.1; *see also Owens v. Am. Hardware Mut. Ins. Co.*, No. 11-6663, 2012 U.S. Dist. LEXIS 182953, at *8 n.4 (D.N.J. Dec. 31, 2012) ("The proper response to a procedurally correct Rule 56 motion is to file a counter statement that denies the fact is material, admits the material fact, or denies the material fact by counter proofs conforming to the rules of evidence.").

4

27.) Thereafter, Plaintiff did not ask his union to file a grievance on his behalf, and the union took no further action in connection with the September 23, 2010 incident. (*Id.* at ¶ 28.)

Plaintiff did not suffer a reduction in his pay, nor was he terminated, demoted, denied a request for a promotion, or disciplined as a result of the September 23, 2010 incident. (*Id.* at ¶ 29.) Plaintiff continues to work at Continental and has not had any issues since September 23, 2010. (*Id.* at ¶ 23.)

Nevertheless, because of the September 23, 2010 incident, Plaintiff applied for benefits under the Family Medical Leave Act, misses approximately one flight per month, has sought psychological treatment from a licensed psychologist, and has been prescribed medication. (Pl. Supp. SUMF at ¶¶ 42-44.)[5]

## II. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

## III. LEGAL STANDARD

"Summary judgment should be granted only 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Bender v. Twp. of Monroe*, 289 Fed. Appx. 526-526-27 (3d Cir. 2008) (quoting Fed. R. Civ. P. 56(c)). On a summary judgment motion, the moving party must first show that there is no genuine issue of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. The non-moving party

---

[5] In its response to Plaintiff's supplemental Rule 56.1 statement, Continental denies that any of these facts is a result of the events of September 23, 2010, but provides no citation to the record as required under Local Civil Rule 56.1. (*See* Def. Resp. to Pl. Supp. SUMF at ¶¶ 42-44.) Therefore, the Court considers it undisputed that these facts are a consequence of the September 23, 2010 incident. *See* Loc. Civil R. 56.1.

must offer specific facts that establish a genuine issue of material fact; the non-moving party may not simply rely on unsupported assertions, bare allegations, or speculation. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). The Court must consider all facts presented and the reasonable inferences drawn from them in the light most favorable to the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

## IV. DISCUSSION

With this framework in mind, the Court will now address the propriety of granting summary judgment as to Plaintiff's claims for discrimination under the NJLAD, battery, and intentional infliction of emotional distress.

### A. Whether Summary Judgment Should be Granted as to Plaintiff's NJLAD Claim

The NJLAD prohibits discrimination "because of race, creed, color, national origin, ancestry, age, sex, gender identity or expression, affectional or *sexual orientation*, marital status, familial status, liability for service in the Armed Forces of the United States, disability or nationality." N.J.S.A. 10:5-3 (emphasis added). Plaintiff claims that as a result of the September 23, 2010 incident, he suffered mental anguish because of the discrimination and harassment to which Continental subjected him on account of his sexual orientation. (*See* Compl. ¶¶ 20-21.) Although Plaintiff does not specifically articulate the theory upon which his NJLAD claim is premised in his complaint, the Court construes Plaintiff's NJLAD claim as one for hostile work environment. *See, e.g., Bumbaca v. Twp. of Edison*, 373 N.J. Super. 239, 246 (App. Div. 2004) (observing that the NJLAD is "remedial legislation which must be liberally construed.").

"To establish a prima facie claim for hostile work environment under the NJLAD, a plaintiff must establish that defendant's conduct '(1) would not have occurred but for the employee's [protected characteristic]; and it was (2) severe or pervasive enough to make a (3)

6

reasonable [person] believe that (4) the conditions of employment are altered and the working environment is hostile or abusive.'" *Ross v. Rutgers Univ.*, No. 13-2809, 2013 U.S. Dist. LEXIS 131824, at *7 n.2 (D.N.J. Sept. 16, 2013) (quoting *Lehman v. Toys R Us, Inc.*, 132 N.J. 587, 603-04 (1993)) (alterations in original).

Continental argues that it is entitled to summary judgment as to Plaintiff's NJLAD claim because: (1) Plaintiff cannot make a showing of unlawful discrimination because his supervisors were unaware that he is a homosexual; (2) "Plaintiff has failed to show an adverse employment action," and (3) the NJLAD expressly authorizes employers to require employees to adhere to appearance and grooming standards. (Def. Br. at 2-11.) These arguments fail to persuade the Court to grant summary judgment as to Plaintiff's NJLAD claim for the following reasons.

First, whether the September 23, 2010 incident can give rise to an inference of sexual orientation discrimination raises a factual question that would be inappropriate to resolve on a motion for summary judgment. While the Court is mindful that Plaintiff's supervisors testified that they were not aware of Plaintiff's sexual orientation, (*see* Depos. Tr. cited in Def. Br. at 4-5), the Court is also mindful that Plaintiff was open about his homosexuality, (*see* Pl. Supp. SUMF at ¶ 3). Plaintiff also asserted that his supervisors were aware of his sexual orientation in his supplemental Rule 56.1 statement. (Pl. Supp. SUMF at ¶ 3.) Continental did not specifically admit or deny this assertion as required under Local Civil Rule 56.1. (*See* Def. Resp. to Pl. Supp. SUMF at ¶ 3.) The Court, therefore, considers Plaintiff's assertion that his supervisors knew about his sexual orientation to be admitted for purposes of deciding this summary judgment motion. Accordingly, whether Continental unlawfully subjected Plaintiff to a different grooming standard as a result of his sexual orientation is a question for a jury, not the Court, to resolve.

Second, suffering an adverse employment action is an element of a retaliation claim under

the NJLAD, but is not an element of a claim for hostile work environment under that statute. *Compare, e.g., Young v. Hobart West Grp.*, 385 N.J. Super. 448, 465 (App. Div. 2005) (setting forth elements of retaliation claim under NJLAD) *with, e.g., Lehman v. Toys R Us, Inc.*, 132 N.J. at 603-04 (setting forth elements of hostile work environment claim under NJLAD). "[A] hostile work environment claim requires discrimination based on a protected characteristic that is 'severe enough to affect the psychological stability of a minority employee.'" *Elmiry v. Wachovia Corp.*, No. 04-3621, 2007 U.S. Dist. LEXIS 84919, at *41 (D.N.J. Nov. 16, 2007) (analyzing hostile work environment claim under Title VII and NJLAD) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1482 (3d Cir. 1990), *superseded by statute on other grounds*, 42 U.S.C. §§ 1981, 2000e *et seq.* (1991)).

Construing the facts in the record in the light most favorable to Plaintiff compels this Court to conclude that there is a genuine issue of material fact as to whether the September 23, 2010 incident was sufficiently severe to affect Plaintiff's psychological stability. Indeed, it is undisputed that as a result of this incident, Plaintiff received psychological treatment, was prescribed medication, and misses one flight a month. (*See* Pl. Supp. SUMF at ¶¶ 42-44.) Consequently, at this point it would be premature to hold, as a matter of law, that Plaintiff's psychological stability was not affected as a result of the September 23, 2010 incident.

Third, while the NJLAD allows an employer "to require employees to adhere to reasonable . . . grooming . . . standards," N.J.S.A. 10:5-12(p), it does not allow employers to apply their grooming policy in a discriminatory manner. *See* N.J.S.A. 10:5-12(p); *see also Wiseley v. Harrah's Entm't, Inc.*, No. 03-1540, 2004 U.S. Dist. LEXIS 14963 (D.N.J. Aug. 4, 2004) (holding that "Title VII and NJLAD claim that alleges discriminatory application of the [employer's] grooming policy presents a cognizable claim under Title VII and NJLAD."). Accordingly, that

the NJLAD does not bar Continental from enforcing a grooming standard upon its employees does not, as a legal matter, defeat Plaintiff's claim that this standard was applied to him discriminatorily.

As Continental has failed to establish that there are no disputed issues of material fact as to whether Plaintiff can make a prima facie case of hostile work environment under the NJLAD, the Court will not grant summary judgment as to Plaintiff's NJLAD claim.

B. Whether Summary Judgment Should be Granted as to Plaintiff's Battery Claim

Plaintiff alleges that Continental committed an act of battery through its agents when Jacob cut his hair. (*See generally* Compl; *see also* Def. Opp'n Br. at 13.)

Under New Jersey law, "'[a]ny non-consensual touching is battery' and . . . such a cause of action is established by 'proof of an unauthorized invasion of the plaintiff's person, even if harmless.'" *Kelly v. Cnty of Monmouth*, 380 N.J. Super 552, 559 (App. Div. 2005) (quoting *Perna v. Pirozzi*, 92 N.J. 446, 460-61 (1983)). "If consent was obtained by the use of fraud or misrepresentation, an action for battery may be appropriate." *Tonelli v. Khanna*, 238 N.J. Super 121, 128 (App. Div. 1989).

Continental argues that summary judgment should be granted as to Plaintiff's battery claim because Plaintiff specifically requested that Jacob cut his hair, and thus consented to the haircut. (*See* Def. Br. at 9.) Plaintiff, on the other hand, suggests that because he consented to the haircut under economic duress, summary judgment as to his battery claim should be denied. (Pl. Opp'n. Br. at 13.) The only authority Plaintiff cites for this proposition is *Continental Bank of Pa. v. Barclay Riding Academy, Inc.*, a case in which the New Jersey Supreme Court noted that "there are circumstances in which economic pressure may invalidate an otherwise enforceable contract." 93 N.J. 153, 175 (1983).

Plaintiff's reliance on *Continental Bank* is misplaced because this case has absolutely

9

nothing to do with whether a person who consents to touching under economic duress may prevail on a battery tort claim. Indeed, Plaintiff has admitted that he requested that Jacob cut his hair, and that he had no complaints about Jacob. (*See* Pl. Resp. SUMF at ¶¶ 44-45.) In light of this, the Court fails to see how the haircut constituted an "unauthorized invasion" of Plaintiff's person. *See Kelly*, 380 N.J. Super. at 559. Accordingly, Continental's motion is granted insofar as it seeks summary judgment as to Plaintiff's battery claim.

    B.    <u>Whether Summary Judgment Should be Granted as to Plaintiff's Claim for Intentional Infliction of Emotional Distress</u>

To prevail on his claim for intentional infliction of emotional distress, Plaintiff must establish that: "(1) [Continental] acted intentionally or recklessly; (2) the conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community; (3) [Continental's] conduct is the proximate cause of Plaintiff's emotional distress; and (4) the distress was so severe that no reasonable person could be expected to endure it." *Angle v. United States*, No. 12-2495, 2012 U.S. Dist. LEXIS 181686, at *11 (D.N.J. Dec. 21, 2012) (Linares, J.) (citing *Buckley v. Trenton Saving Fund Soc'y*, 111 N.J. 355, 366-67 (1998)).

New Jersey's Appellate Division has observed that "the workplace has too many personal conflicts and too much behavior that might be perceived as uncivil for the courts to be used as the umpire for all but the *most extreme workplace disputes*." *Ingraham v. Ortho-McNeil Pharmaceutical*, 422 N.J. Super. 12, 23 (App. Div. Aug. 25, 2011) (emphasis added). This is why "conduct in the workplace will rarely be so egregious as to give rise to a claim of intentional infliction of emotional distress." *See id.* (citing cases); *accord Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988) (noting that it is "extremely rare to find conduct in the employment context which will rise to the level of outrageousness necessary to provide a basis for recovery for

the tort of intentional infliction of emotional distress.") (applying Pennsylvania law).

"Conduct that has been found to meet this 'elevated threshold,' and thus to permit a determination by a jury of potential liability, includes: (1) a county sheriff's using an atrocious racial slur to refer to an African-American employee; (2) a defendant teacher's false report that the plaintiff teacher, a practicing non-violent Buddhist, had threatened to kill her students, and arranging to have the plaintiff removed publicly from the school, allegedly in retaliation for rebuking the defendant's sexual advances; (3) a supervisor and two co-worker's at a military facility surrounding the plaintiff and making comments and gestures to suggest that she was to perform a sexual act on the supervisor while the others watched, followed by a threatening telephone call implying that the Mafia would become involved if the plaintiff pursued the investigation; (4) a landlord's intentional shutting off heat, running water, and security in a rent-controlled building in an effort to induce the tenants to vacate; and (5) a doctor's allegedly telling parents that their child was suffering from a rare disease which may be cancerous knowing that the child has nothing more than a mildly infected appendix." *Ingraham*, 422 N.J. Super. at 21 (citations and internal quotation marks omitted).

By contrast, New Jersey "courts have declined to find sufficiently extreme and outrageous conduct where: (1) the decedent's children from an earlier marriage were not informed about and thus excluded from a viewing at a funeral home after the decedent was murdered; (2) a supervisor expressed doubt that the plaintiff had been diagnosed with breast cancer, and then came near her on the verge of physically bumping into [the plaintiff's] breast area as if to see if she truly had a mastectomy; (3) managers at an appliance retailer brought theft charges against the plaintiff sales manager for selling a television to his brother-in-law below cost; and (4) the defendant in a divorce case had a long-term adulterous affair with her boss." *Id.* at 22 (citations and internal quotation

11

marks omitted) (bracketed text in original).

Here, the Court does not see how Continental's alleged discriminatory conduct approaches the conduct which New Jersey courts have determined is sufficiently outrageous or extreme to sustain a claim for intentional infliction of emotional distress. To be clear, Continental's alleged discriminatory application of its grooming standards to Plaintiff may, if true, reflect an irrational prejudice against homosexual persons. However, the strict standard that courts apply in analyzing intentional infliction of emotional distress claims arising out of workplace conduct compels this Court to conclude that no reasonable jury may find that Continental's alleged conduct was sufficiently outrageous or extreme to sustain a claim for intentional infliction of emotional distress. *See Ingraham*, 422 N.J. Super. 12, 23 (App. Div. Aug. 25, 2011); *see also Ernesto v. Rubin*, No. 97-4683, 1999 U.S. Dist. LEXIS 21501 (D.N.J. Aug. 31, 1999), at *47 (dismissing homosexual plaintiff's claim for intentional infliction of emotional distress premised on workplace discrimination on account of his sexual orientation), *affirmed by* 2001 U.S. App. LEXIS 20093 (3d Cir. 2001). Accordingly, summary judgment is granted as to Plaintiff's claim for intentional infliction of emotional distress.

V.  **CONCLUSION**

For the foregoing reasons, Continental's motion is granted in part and denied in part. Specifically, the Court grants Continental's motion for summary judgment as to Plaintiff's claims for battery and intentional infliction of emotion distress. Continental's motion is denied as to Plaintiff's NJLAD claim. An appropriate Order follows this Opinion.

Date: December 4, 2013

JOSE L. LINARES
United States District Judge